IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT M. KRUTKO,** | : | |
| | : | Case No. 2:11-cv-610 |
| Plaintiff, | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | |
| **FRANKLIN COUNTY, OHIO,** *et al.*, | : | Magistrate Judge Norah M. King |
| | : | |
| Defendants. | : | |
| | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 34). Plaintiff Robert M. Krutko ("Krutko") brings this suit to recover for injuries he allegedly incurred while an inmate at the Franklin County Corrections Center II ("FCCCII") in 2009 to 2010. For the reasons stated herein, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

**II. BACKGROUND**

Plaintiff, Robert M. Krutko ("Krutko"), was incarcerated in FCCCII from November 4, 2009 to February 13, 2010. (Doc. 34 at 3) Defendants are: (1) Franklin County, Ohio; (2) Franklin County Sheriff Zach Scott; (3) Franklin County Director of Public Facilities Management James Goodenow; (4) numerous supervising officers and their deputies, employed by FCCCII, sued in their official and individual capacities and; (5) Mental Health Liaison Douglas Hahn, also employed by FCCCII. (Doc. 30) From November 17, 2009 to November 20, Plaintiff was held in an area of FCCCII called "1 South 9," colloquially known to staff and inmates as "the Hole." (Doc. 30 at 3) The Hole is a temporary holding area designed, for the

purpose of infectious disease control, as a negative air flow space. It is also used to house inmates with other medical or mental health issues. (Doc.34 at 3)

Plaintiff avers that on one of the days, unspecified, while he was in the Hole, the toilet in the cell "rapidly began to overflow with sewage and human excrement." (Doc. 38 at 4) As the toilet overflowed, Plaintiff slept on the floor of the cell. (*Id.*) He was alerted to the problem by the shouts of his two cell mates, but by the time he arose, "most of his body and clothing were covered with the sewage." (*Id.*) Plaintiff alleges the guards did not release him from the cell for approximately 25 minutes following the overflow. (Doc. 30 at 4) Once Plaintiff was removed from the cell, he was transferred to the "medical department" where Plaintiff claims he was denied permission to shower for "about five or six days" until he was returned to the general population. (*Id.* at 5)

Defendants' records from the facility do not corroborate Plaintiff's account in multiple instances. First, Defendants' maintenance records do not show any instance of a plumbing malfunction in "1 South 9" on the dates indicated by Plaintiff. (Doc. 38, Exh.1 at 161) Second, Defendants' records show Plaintiff spent only three days in the Hole, from November 17 to November 20, when he was returned to the general population. (Doc. 34, Exh. 2 at 4) Third, Defendants' records contain no mention of Plaintiff spending "about five or six days" in the "medical department," or any other specialized unit on or about the dates in question. Fourth, although Plaintiff's pleadings allude to "constant sewage back-ups" and "[Defendants'] policy and custom of not thoroughly cleaning the cells . . . after sewage backups and overflows," Plaintiff, neither cites specific examples, nor provides evidence of those allegations. (Doc. 30 at 5)

Plaintiff's Second Amended Complaint (Doc. 30) recites eight causes of action in total,

2

against various combinations of Defendants. In summary, Plaintiff brings claims against all Defendants "pursuant to 42 U.S.C. § 1983" for "violation of Plaintiff's Constitutional rights." (Doc. 30 at 5-8) It is unclear from Plaintiff's Second Amended Complaint what those Constitutional rights are, but Plaintiff's factual allegations suggest violations of the Eighth Amendment prohibition of cruel and unusual punishment.[1] (*Id.*) Plaintiff also brings common law negligence claims against all individual Defendants. Specifically with regard to Defendants Edgington, Rettig, Hatzer, Lawler, Koller, Harrow, Penix, Turner, and Hahn, Plaintiff alleges common law Intentional Infliction of Emotional Distress ("IIED"). (*Id.*) Finally, Plaintiff alleges Defendant Franklin County is liable for the negligence and IIED of its employees under the doctrine of *respondeat superior*.[2] (*Id.*)

Defendants move for summary judgment on all counts. (Doc. 34) Defendants' Motion for Summary Judgment has been fully briefed, including a hearing held on April 15, 2013. The issue is now ripe for adjudication.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, (1986)).

---

[1] Plaintiff has not, however, alleged that his "conditions of confinement" violated the Eighth Amendment.
[2] The Court construes Plaintiff's "Count VIII: Respondent Superior" to refer to *respondeat superior*.

3

The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir. 1993). The suggestion of a mere possibility of a factual dispute is insufficient to defeat a movant's motion for summary judgment. *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986)). Further, "summary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.  When a plaintiff, however, invokes summary judgment "and a showing is made by the [plaintiff], the burden rests on the [defendant] to show that he has a ground of defense fairly arguable and of a substantial character." *Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co.*, 137 F.2d 871, 877 (6th Cir. 1943).

The necessary inquiry for this Court in determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251–52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir. 1995).  Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment. *Wolfe v. Vill. of Brice, Ohio*, 37 F. Supp. 2d 1021, 1026 (S.D. Ohio 1999).  *See Anderson,* 477 U.S. at 251; *Copeland,* 57 F.3d 476 at 479.

With regard to affidavits, Rule 56 (e) requires that affidavits submitted in support of, or in opposition to motions for summary judgment include facts based on personal knowledge, and that personal knowledge "must be evident from the affidavit." *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F.Supp.2d 948, 956 (S.D. Ohio 2000). Affidavits at the summary judgment stage also may not rely upon inadmissible hearsay because inadmissible hearsay "cannot create a genuine issue of material fact." *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 83 (6th Cir. 1997).

## IV. LAW AND ANALYSIS

### A. Claims against Defendant Franklin County

Plaintiff brings claims against Franklin County under 42 U.S.C. § 1983 and the theory of *respondeat superior*. For the reasons stated below, Plaintiff fails to raise a genuine issue of material fact with regard to Franklin County's liability. Defendants' Motion for Summary Judgment with regard to Franklin County is, thus, **GRANTED**.

### 1. Franklin County Not Liable Under 42 U.S.C. § 1983

Under *Monell v. Dept. of Soc. Srvs.*, 436 U.S. 658 (1978), a county is liable under 42 U.S.C. § 1983 only where a deprivation of constitutional rights results from "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."[3] Furthermore, there must be an "affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823.

Here, Plaintiff vaguely asserts Franklin County "has adopted several policies or customs which directly related to the Plaintiff's injury," but he does not identify what they are. He states

---

[3] Except for this circumstance, a county is not generally liable under 42 U.S.C. § 1983 because it is not a "person," as defined by the statute. *Monell*, 436 U.S. at 694.

5

the staff is "improperly trained," but does not say how any training was insufficient or provide evidence of insufficency. Plaintiff also states that the county "is aware of the numerous plumbing problems associated with the FCCCII." Plaintiff attaches a maintenance log to his amended complaint, but the primary effect of that document is to demonstrate that most plumbing issues at FCCCII are caused by inmate "misuse" of sinks and toilets, and to demonstrate Franklin County regularly repairs reported defects. There is no allegation by Plaintiff of a custom or policy of the county not to repair plumbing problems or to deny inmates facilities to clean themselves.

Thus, Defendant Franklin County's Motion for Summary Judgment with regard to Plaintiff's 42 U.S.C. § 1983 claim is **GRANTED**. The claim is **DISMISSED**.

### 2. Franklin County Not Liable Under *Respondeat Superior*

Plaintiff also alleges Franklin County is liable for his 42 U.S.C. § 1983 and state law claims under the theory of *respondeat superior*. It is well settled that *respondeat superior* does not make local governments liable under 42 U.S.C. § 1983 because "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). The Court notes that it is not required to decide whether an Ohio county is amenable to suit under 42 U.S.C. § 1983 because Plaintiff, following discovery, has simply failed to allege a specific policy or custom for which Franklin County could be liable.

As for Plaintiff's state law claims, state law determines whether Franklin County is amenable to suit. In Ohio, county liability is governed by O.R.C. § 301.22, which provides that:

> only a county that adopts a 'charter or an alternative form of government' may be considered a 'body politic and corporate for the purpose of enjoying and exercising the rights and privileges conveyed under it by the constitution and the laws of this state' and is 'capable of suing and being sued, pleading and being

6

impleaded.'

*Winston v. County of Franklin*, 2:10-CV-1005, 2011 WL 2601562 at *4 (S.D. Ohio June 30, 2011) (quoting O.R.C. § 301.22).  Since, as previously found by this Court, Franklin County has not adopted a charter or an alternative form of government, it is not amenable to suit under Ohio law.  *Id*.

Plaintiff's claims under the theory of *respondeat superior* against Defendant Franklin County are, thus, **DISMISSED**.  All claims against Franklin County have now been dismissed. Franklin County's Motion for Summary Judgment as to all claims against it is **GRANTED**. Franklin County is **DISMISSED** from this case.

### B. Claims against James Goodenow, Director of Public Facilities Management

Plaintiff has also named Franklin County's Director of Public Facilities Management James Goodenow as a Defendant, in his official capacity.  Against Defendant Goodenow, Plaintiff alleges violations of 42 U.S.C. § 1983 and state law negligence.

On behalf of Franklin County's Board of Commissioners, Director Goodenow is responsible for the management and direction of staff who maintain Franklin County's facilities, including FCCCII. (Doc. 34 at 5)  Under O.R.C. § 307.021, however, it is the "office of the sheriff . . . [that is] designated as the state agency having jurisdiction over" a county jail.  Neither Goodenow, nor the Board of Commissioners has "control over the operation of jails with respect to the duty to keep its inmates safe."  *Saunders v. McFaul*, 593 N.E.2d 24, 28 (Ohio Ct. App. 8th Dist. 1990).  Since Defendant Goodenow did not control the operation of FCCCII, he had no ability to prevent or remedy the injuries Plaintiff allegedly suffered.

Plaintiff relies on *Farmer v. Brennan*, 511 U.S. 825 (1970) for the proposition that a "prison official" is liable for harm resulting from an inmate's conditions of confinement when

the prison official has been "deliberately indifferent" to the risk of harm. Generally, Plaintiff's statement of the *Farmer* analysis is correct, but the decision is inapposite to this case. Plaintiff cites no law to suggest the Director of Facilities Management for a county is a "prison official." Furthermore, Plaintiff's own exhibit of FCCCII's maintenance logs do not contain any mention of a toilet overflow in the Hole during the days Plaintiff was held there. Defendant Goodenow could not have been "deliberately indifferent" to an overflow of which he had no knowledge. Plaintiff does not contend the exhibit is an inaccurate log of maintenance. To the contrary, some of Plaintiff's arguments rely on the accuracy of the log. Thus, the *Farmer* analysis does not implicate Defendant Goodenow in anyway.

Since Defendant Goodenow had neither the duty, nor authority to control the operation of FCCCII under Ohio law and Plaintiff has failed to create a genuine issue of material fact with regard to Goodenow's alleged deliberate indifference, Defendant Goodenow's Motion for Summary Judgment is **GRANTED**. All claims against Defendant Goodenow are **DISMISSED**.

### C. Claims against Lieutenant Douglas Edgington and Sergeant Kelly Rettig

Plaintiff has not alleged he ever had personal involvement with Defendants Edgington or Rettig. He has not alleged they caused the toilet to overflow or prevented Plaintiff from cleaning himself. Rather, Plaintiff alleges these Defendants have supervisory liability for the actions of deputies working under them. In the Sixth Circuit, for a supervisor to be liable under § 1983, she must have done "more than play a passive role in the alleged violation or show[] mere tacit approval of the goings on." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). Put another way, "[s]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Id*.

Plaintiff has adduced no evidence to show either Edgington or Rettig had knowledge of

8

the incident which allegedly caused injury to Plaintiff, or otherwise played more than "a passive role." Plaintiff does not allege they were present when he was eventually removed from his cell or that he ever had direct contact with them. Moreover, with regard to Rettig, Plaintiff mentions him in his Second Amended Complaint, but nowhere else in his pleadings. It is impossible for the Court to know anything about Rettig, aside from his name, which is derived from the record before the Court. Plaintiff has fallen far short of his burden to raise a disputed issue of material fact as to whether Edgington or Rettig "more than play[ed] a passive role in the alleged violation." Plaintiff has also not adduced any evidence about specific actions or inactions of Edgington and Rettig to raise a genuine material issue of fact as to his state law negligence and IIED claims. Defendants Edgington and Rettig's Motion for Summary Judgment is, therefore, **GRANTED**. Defendants Edgington and Rettig are, hereby, **DISMISSED**.

### D. Claims against Mental Health Liaison Douglas Hahn

Defendant Douglas Hahn is employed by the Franklin County Sheriff as a Mental Health Liaison.[4] He worked at FCCCII during Plaintiff's incarceration. Defendant Hahn conducted a number of mental health evaluations of Plaintiff to determine whether he posed a danger to himself or others. It is uncontroverted that, as a Mental Health Liaison, Hahn's only duties pertain to inmates' mental health. *Douglas Hahn Affidavit*, Doc. 34-3 at 2. Plaintiff has adduced no evidence to the contrary, nor has Plaintiff argued or demonstrated Hahn had the authority to remove Plaintiff from his cell or permit him to use the showers. Hahn appears to have no connection to this incident except that he met with Plaintiff sometime after the incident to determine whether Plaintiff should be removed from safety precautions. *Id*. at 3. There is simply no evidence in the record to show Hahn had any duty regarding Plaintiff's living

---

[4] Plaintiff's Second Amended Complaint incorrectly identifies Defendant Hahn as "Medical Director."

conditions or physical state.  Plaintiff fails to raise a genuine issue of material fact as to Defendant Hahn's liability under § 1983 or state law.

Defendant Hahn's Motion for Summary Judgment is, thus, **GRANTED**.  Defendant Hahn is **DISMISSED**.

### E. Claims against Individual Sheriff's Deputies

#### 1. Personal Involvement

Plaintiff has named six individual deputies as Defendants in his Complaint: Hatzer, Lawler, Koller, Harrow, Penix, and Turner.  In the Sixth Circuit, "to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by [sic] each of the named defendants." *Bennett v. Schroeder*, 99 Fed.Appx. 707, 712-13 (6th Cir. 2004).  Defendants contend that "[n]one of the deputies had any personal involvement with Krutko during the relevant time frames," so the deputies should be dismissed. *Defendants' Motion*, Doc. 34 at 10. There is a dispute of fact, however, as to whether these Defendants had "personal involvement" with Plaintiff.  Plaintiff claims they delayed removing him from the cell that allegedly contained sewage and mocked him; Defendants claim they did not.  Plaintiff's allegations state personal involvement by the deputies named.  It is a matter of Plaintiff's word against that of Defendants, which is an issue for a trier of fact, not this Court.

There is evidence that makes Plaintiff's version unlikely.  For instance, Plaintiff has named three female deputies as Defendants even though they are prohibited from directly overseeing male inmates and were not assigned to the area of the prison where he was housed. Also, none of the shift or maintenance logs where deputies would usually record an incident such as an overflowing toilet, which would lead them to remove inmates from a cell, contains any mention of such an incident.  Nevertheless, the Court cannot say that a reasonable jury might not

10

accept Plaintiff's testimony as true.  Moreover, Plaintiff's wife states, in her affidavit, that during a visit to FCCCII around November 20, 2009, she could "see that [Plaintiff's] skin and clothing contained dried material and stains which resembled urine and feces." *Affidavit of Laura Krutko*, Doc. 38-2 at 2.  A jury could, in light of the testimony of Plaintiff and his wife, conclude Defendants' records were incomplete or falsified, or that female deputies had been called in, even against protocol, to assist in the situation.

### 2. Constitutional Violation and Qualified Immunity

Defendants also argue that even construing facts in the most favorable light for Plaintiff, which the Court does on summary judgment, that Plaintiff's allegations do not amount to a constitutional violation.  Furthermore, Defendants argue they are entitled to qualified immunity.  Under the *Saucier* test as modified by *Pearson v. Callahan*, 555 U.S. 223 (2009), "[f]irst, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Id*. at 232 (internal citations omitted).  The Court notes decisions from other Circuits which have found exposure to unsanitary conditions for limited duration does not rise to the level of a constitutional violation.  *See, e.g., Whitnack v. Douglas County*, 16 F.3d 954 (8th Cir. 1994) (Court of Appeals held there was no constitutional violation where inmates were confined in a cell containing a toilet covered with dried feces, walls covered in dried mucus, a sink covered in hair and vomit, and a floor covered with garbage and rotting food because inmates had been given adequate cleaning supplies after three hours.); *White v. Nix*, 7 F.3d 120 (8th Cir. 1993) (Court of Appeals held there was no constitutional violation where inmate was housed in a cell with reduced ventilation for eleven days and magistrate found the cell was not

11

covered with feces as plaintiff had alleged.); and *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (Court of Appeals held there was no constitutional violation where plaintiff had not received certain hygienic items, such as toilet paper, for four days and cell contained cockroaches because Defendants had not acted with deliberate indifference and had taken steps to correct the problems.). Those cases, however, are not the law of the Sixth Circuit. In *Koch v. County of Franklin*, No. 2:08-cv-1127, 2010 WL 2386352 (S.D. Ohio, June 10, 2010), another case involving allegations of unsanitary conditions in a Franklin County detention facility, this Court summarized the relevant Supreme Court and Sixth Circuit case law:

> A claim for failure to prevent harm will succeed where prison officials acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm. *Farmer*, 511 U.S. at 834 . . . This test involves both an objective and subjective component. "First, the deprivation alleged must be, objectively, 'sufficiently serious,'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities,' " *Farmer,* 511 U.S. at 834 (internal citations omitted). "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citation omitted). To satisfy the subjective component, "an inmate must show that prison officials had "a sufficiently culpable state of mind." *Id.* Although the deliberate indifference standard "describes a state of mind more blameworthy than negligence," this standard is satisfied if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 835, 837. . . "Additionally, the prisoner must demonstrate that the risk is one which society deems so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005).

This Court considers that society deems it a violation of contemporary standards of decency to allow a prisoner to be covered in raw sewage, delay removing him from the affected area while taunting him, and then prevent him from cleaning himself for days. To allow an inmate to be covered in sewage for days would be the very definition of "deliberate indifference." It is unnecessary to explain the potentially serious medical hazards of exposure to raw sewage for an

12

extended period.  If these events transpired as the Plaintiff attests, this Court would find a clear constitutional violation, as such activity is a constitutional violation not merely of recent vintage.  The conduct Plaintiff alleges would amount to cruel and unusual punishment, even had it occurred in the early days of this republic.  Therefore, Plaintiff's allegations satisfy the *Saucier* test and qualified immunity does not apply to Defendants.  To determine whether Plaintiff's account is correct is, again, a question for a trier of fact.

Plaintiff has attested that the named deputies were personally involved in his alleged injury, an injury that, if Plaintiff's account is believed, is a constitutional violation.  Defendants' Motion for Summary Judgment on Plaintiff's § 1983 claims against individual deputies is, thus, **DENIED**.  The parties' contradictory affidavits, without other corroborating evidence for either party, raise disputed issues of material fact.

### 3. State Law Claims

Defendants urge that, at least, the state law claims against them should be dismissed under the immunity offered by O.R.C. § 2744 *et. seq.*  There is an exception to general immunity under Ohio law for "an employee of a political subdivision" when "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."  O.R.C. § 2744.03 (A)(6)(b).  Again, if the Plaintiff's account of events is believed, Defendants' delay in removing Plaintiff from a cell filling with raw sewage and the subsequent refusal to allow Plaintiff to clean himself constitutes, at a minimum, "reckless" conduct.  Moreover, it would be difficult to imagine a purpose for such conduct that was not malicious.  Defendants' Motion for Summary Judgment on Plaintiff's state law claims against individual deputies is **DENIED**.

### F. Claims against Sheriff Zach Scott

Finally, the Court notes Plaintiff's Memorandum in Opposition to Defendant's Motion

for Summary Judgment does not specifically oppose the dismissal of Sheriff Zach Scott as a Defendant. In fact, outside Plaintiff's Complaint, he has not mentioned Sheriff Zach Scott. As previously discussed with regard to Defendants Edgington and Rettig, supervisory liability attaches under § 1983 only where a supervisor has been directly involved in the constitutional violation. Plaintiff does not allege any personal involvement of the Sheriff, nor does any evidence indicate the Sheriff ever had knowledge of the incident in question prior to the filing of this lawsuit. Also, there is no evidence in the record indicating the Sheriff acted negligently in this matter for the purposes of Plaintiff's state law negligence claim. Given the lack of any evidence implicating Defendant Scott, and Plaintiff's failure to oppose his Motion for Summary Judgment, Defendant Scott's Motion for Summary Judgment with respect to all claims is **GRANTED**. Defendant Scott is **DISMISSED**.

## V. CONCLUSION

For the reasons stated above, Plaintiff has failed to raise any disputed issues of material fact with respect to his claims against Defendants Franklin County, Scott, Rettig, Edgington, Goodenow, and Hahn. Thus, the Motion for Summary Judgment with regard to all claims against those Defendants is, hereby, **GRANTED**.

Plaintiff has, however, raised disputed issues of material fact with regard to Defendants Hatzer, Lawler, Koller, Harrow, Penix, and Turner, the individual deputies. Whether they engaged in conduct which caused Plaintiff's alleged injury is a question for a trier of fact. The Motion for Summary Judgment with respect to those six Defendants is, hereby, **DENIED**. Plaintiff's claims against them may proceed to trial.

**IT IS SO ORDERED.**

                                                                          ___s/ Algenon L. Marbley___

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: June 13, 2013**